8043

FLEMING v. RIEGEL.

1. CORPORATIONS—CONTRACTS.—There is no evidence in this case from which it could be concluded that certain stockholders of the Ware Shoals Manufacturing Company upon consideration contracted to keep Mr. Dial as president of the company for any time which can be rendered certain at any compensation definitely fixed.
2. IBID.—IBID.—Nor is there evidence to support the claim that certain stockholders as a consideration in part for a block of stock agreed to take at the ruling market prices the output of the company for all future time.
3. IBID.—IBID.—Nor is there any evidence to support the allegations that defendants agreed to furnish such money as the company needed from time to time at lowest market rates of interest, or that plaintiff stockholders have been damaged by their failure to do so.
4. IBID.—IBID.—Nor is there error in the Circuit Judge in dismissing the complaint as to the alleged extravagance of certain stockholders or directors in the erection of private residences on the corporate property and in issuing preferred stock.

Before Jos. A. McCOLLOUGH, Special Judge, Greenwood. Affirmed.

Action by J. C. C. Fleming, J. T. Johnson, N. B. Dial, W. L. Gray, H. K. Aiken, W. H. Hughes and J. H. Whar-

ton against Benjamin Riegel, George Riegel, Howard Riegel, Benjamin D. Riegel, John S. Riegel, John R. Dewitt, E. W. Sparks and Ware Shoals Manufacturing Company. Plaintiffs appeal.

*Messrs. Simpson & Bomar, Simpson, Cooper & Babb, F. P. McGowan* and *A. C. Todd,* for appellants. *Mr. Todd* cites: *Contract may be made out from admissions, acts and conduct of the parties:* 2 Cook, sec. 606; 92 N. W. 568. *Subscriber for stock in an organized corporation is not such until accepted by corporation:* 1 Cook, secs. 72, 84; 95 Wis. 145; 65 Me. 374; 39 Me. 587; 1 Tex. Civ. App. 55; 58 L. T. R. 801; 41 Pa. St. 54; 10 Cyc. 376. *Contract is not in violation of public policy:* 77 S. C. 471; 19 S. C. 185; 11 Rich. Eq. 447; 5 S. C. 136; 9 Cyc. 482, note 42; 11 L. ed. U. S. 205; 108 U. S. 330; 33 L. ed. U. S. 191; 181 Mass. 476; 33 L. ed. U. S. 524; 54 N. W. 244; 22 L. ed. U. S. 492; 75 C. C. A. 631; 27 Fed. 632; 65 C. C. A. 627; L. R. 12, App. Cas. 589; 25 N. E. 202; 2 Cook, sec. 662; 3 Clark & Mar., sec. 657; 3 Thomp., sec. 2867; 6 Ohio 783; 98 Ala. 241; 116 La. 90; 80 N. Y. 527; 97 N. Y. 378; 104 Fed. R. 219; 6 At. 694; 139 Fed. 717; 35 L. R. A. 309; 92 Hun. 230; 47 At. 638; 28 At. 75; 47 At. 471; 12 So. 723; 94 Pac. 441; 120 Ill. App. 159; 191 Pa. St. 298; 175 Mass. 105; 94 Pac. 441. *The contract is mutual:* 36 Cyc. 622; 3 Page on Con. 2449-50, 2456; 68 S. C. 445; 36 Cyc. 631; 80 S. C. 215; 20 Ency. 781; 43 S. E. 114; 94 U. S. 76; 24 L. R. A. 255; 1 L. R. A. 380; 23 N. J. Eq. 536; Page, sec. 2460; 43 L. R. A. 427; 34 L. ed. U. S. 844; 57 S. C. 276; 22 Ency. 909; 56 S. C. 259. *This case is taken out of the statute of frauds by part performance:* 3 Pom. 1409; 29 Ency. 635; Rich. Eq. Cas. 5; 2 Bail. 614; 57 S. C. 149, 559; 3 S. C. 298; 21 S. C. 492; 39 S. C. 367; 26 S. C. 255. *Plaintiffs have pursued the proper remedy:* 53 S. C. 529; 60 S. C. 191; 66 S. C. 106; 48 S. C. 83. *Plaintiffs are entitled to specific performance:* Evans' Eq., sec 79;

22 S. C. 460; 3 Pom. Eq. Jur. 1244; 4 Id. 1341; 37 L. R. A. 682. *Entire and separable contracts:* 73 S. C. 1; 9 Cyc. 569; Clark on Con. 477.

*Mr. McGowan* cites: *If Court cannot enforce one element of a contract it may enforce another:* Pom. R., sec. 455; 1 Pom. Eq. Jur., sec. 237; 22 Ency. 948; 53 S. C. 569; 48 S. C. 175; 57 S. C. 278. *Legal contract is established here:* 22 S. C. 467; Pom. Eq. Jur., sec. 1294. *Party to contract accepting performance cannot plead statute of frauds:* 26 S. C. 81; 57 S. C. 559; Chev. Eq. 167; 4 Des. 185; McM. Eq. 87; 1 Rich. 199; 9 Rich. 103. *The contract should be specifically enforced in all of its elements:* Adams' Eq. 77; 22 Ency. 909, 917; 10 Cyc. 986; 22 Ency. 1921. *If contract cannot be enforced contract of sale of stock should be rescinded:* Pom. Eq. Jur., sec. 1377; Adams' Eq., sec. 175; 36 Cyc. 752; Rich. Eq. 235; 3 Ency. 929; 36 Cyc. 562; 22 Ency. 993.

*Messrs. Cothran, Dean & Cothran* and *Grier & Park,* contra. *Messrs. Cothran, Dean & Cothran* cite: *Contract between stockholders to so vote stock as to control the corporation is void:* 65 N. W. 809; 37 L. R. A. 688; 42 Am. R. 162; 133 Mass. 309; 117 Mass. 548; 120 Mass. 501; 21 At. 847; 2 C. S. Ct. 178; 67 N. H. 437; 5 N. Y. App. Div. 342; 13 Id. 108; 123 Mass. 286; 5 L. R. A. 744; 82 Mich. 344; 133 Mass. 309; 48 N. J. Eq. 208; 28 Kan. 265; 62 N. Y. App. Div. 11; 62 S. W. 795; 77 N. W. 820; 32 At. 770; 135 U. S. 507; 37 L. R. A. 690; 35 L. R. A. 317; 35 Pac. 1045; 4 L. R. A. 521; 1 Cook, sec. 137. *Corporation must be governed by its by-laws:* 16 Fed. 3.

*Messrs. Grier & Park* cite: *Contract is lacking in mutuality:* 24 S. E. 600; Frey Sp. Per. 198; 30 L. R. A. 491; 2 Am. & Eng. Dec. in Eq. 523; 7 Am. D. 305; 3

Pom. Eq. 2163; 2 Strob. Eq. 76; 1 Hill Ch. 57; 41 S. C.
534; 18 S. C. 501; 32 S. C. 533; 68 S. C. 235. *Court of
equity cannot enforce a contract to keep a party in office:*
Con., art. IX, sec. 11; 15 Cyc. 279; 1 Pom. Eq. Jur. 195;
65 S. C. 5; Code of Proc. 428; 2 Am. D. in Eq. 122. *Contract to keep Dial in office is void as against public policy:*
Art. IX, sec. 2; 2 Dec. in Eq. 561; 23 L. ed. U. S. 225; 2
Cook 1345; 56 Am. St. R. 119.

November 25, 1911. The opinion of the Court was
delivered by

MR. CHIEF JUSTICE JONES. This is a suit in equity, by
the plaintiffs, as minority stockholders in the corporation
called Ware Shoals Manufacturing Company against the
corporation itself and the other defendants above named,
as majority stockholders, seeking specific performance of
a contract partly oral and partly in writing, alleged to have
been made by the defendants, and praying an injunction
against the continuance of certain acts on the part of the
defendants charged to be in violation of such agreement and
of the rights of the plaintiffs as stockholders. The complaint
also seeks an accounting by the individual defendants for
certain moneys belonging to said corporation alleged to
have been illegally and wrongfully expended in breach of
such agreement and in disregard of the rights of the plaintiffs as minority stockholders; and there is a prayer for
alternative relief by the cancellation of the alleged contract
in case the same cannot be enforced according to its terms
as averred by the plaintiffs, and for a restoration of the
*status* of the plaintiffs as stockholders, as same is claimed
to have existed prior to the making of the said contract
under which the individual defendants became stockholders
therein. It is further charged in the complaint that, by
reason of the alleged wrongful, wilful and malicious acts
of the individual defendants in violation of said contract,
the value of the shares of stock held by the plaintiffs and

other minority stockholders has been greatly impaired, to their damage one hundred thousand dollars, for which amount judgment is also prayed against the said defendants individually.

By consent of parties, all of the issues both of law and of fact were committed for determination to a referee, who took the testimony offered on behalf of the plaintiffs and thereafter made his report recommending the granting of a motion for the dismissal of the complaint, which motion was made by the defendants at the conclusion of the plaintiff's case and without entering upon the evidence of the defense. Upon exceptions duly taken by the plaintiffs to the said report and recommendation of the referee, the cause came on for hearing by the Circuit Court, whereupon a decree was made affirming the findings and conclusions of the referee and overruling the exceptions in all particulars. From this decree the plaintiffs have now appealed to this Court.

It appears that, on June 30, 1905, the plaintiffs were stockholders in the said Ware Shoals Manufacturing Co., a corporation then duly organized with the plaintiff N .B. Dial as president and treasurer, having an authorized capital stock of $500,000.00, of which about $255,000.00 had been subscribed and about $215,000.00 thereof had been paid in cash and property, and shares of stock to the amount last named had been issued and were then held by various shareholders, including the plaintiffs. On the day last mentioned, an agreement in writing was entered into between the defendant B. D. Riegel and the defendant Ware Shoals Manufacturing Co., by which it was stipulated that the said B. D. Riegel would take and pay for the unsold portion of the capital stock of the defendant company, amounting in par value to $285,000.00, upon condition that such subscription should not be binding until and unless, at the next annual meeting of stockholders, the number of the directors of the corporation should be fixed at nine and the

defendant B. D. Riegel should be permitted to name five of
that number.   On the same day, an agreement in writing,
expressed to be upon valuable consideration, was made
between the plaintiff N. B. Dial and the defendant Benja-
min D. Riegel, by which it was contracted that the former
would use his best endeavors to procure the ratification
forthwith of the above mentioned written agreement by the
directors of the Ware Shoals Manufacturing Co., and, at
the next annual meeting of the corporation, would procure
the election of five directors to be named by B. D. Riegel,
who with four others to be named by other stockholders,
would constitute the board of directors, and that N. B. Dial
would sell at par to the defendant N. B. Riegel sufficient
stock in the corporation to make up the total amount of
$255,000.00 of stock thereof, in case the corporation itself
should be unable to sell him stock to that amount at least.
It was thereby further provided that such person as should
be designated by defendant B. D. Riegel should be elected
treasurer of the corporation; and it was also thereby stipu-
lated that the plaintiff N. B. Dial would cause the by-laws
of the defendant corporation to be so amended at the said
annual meeting of the stockholders as to provide, among
other things, for a board of nine directors, who should man-
age and control the affairs of the corporation and who
should have power to borrow money for the benefit of the
company as they might deem advisable and should elect the
president and fix his salary.   The written agreement in
question contains no other provisions having any bearing
upon the issues of the cause, there being no reference therein
to the filling of the office of president other than such as is
contained in the provision last above stated.

It appears from the evidence that the above agreements
were carried at the annual stockholders' meeting of the
defendant company, held on July 22, 1905, the contract
made by the company through its president, with B. D.
Riegel, as already recited, was ratified and accepted in all

its terms, provisions and conditions and nine directors of said company were unanimously elected to serve for one year, among them being six of the individual defendants in this action. Thereafter, in pursuance of this contract and agreement, Benjamin R. Riegel and his codefendants became owners by purchase of a majority of the stock in the defendant corporation; and, at the annual meeting of the stockholders held in 1906, the same directors were unanimously re-elected. During each of the years 1905 and 1906, the plaintiff N. B. Dial was elected by the directors to the position of president of the corporation and he continued to serve as president during those years. Although there appears in the record no resolutions or other official action by the directors fixing the salary of the president during these years it appears to have been the understanding that the salary of the president during that time should be the sum of three thousand dollars per annum, payable in monthly installments, and the plaintiff Dial received payment of such salary.

At the meeting of the stockholders held on the 22d day of July, 1907, the same directors were unanimously re-elected, and, at the meeting of the directors held the same day, as appears by the minutes offered in evidence, the plaintiff N. B. Dial was re-elected president for one year. Thereupon, the president having by request temporarily retired from the meeting, the defendant B. D. Riegel was appointed a committee to confer with the president Dial and to fix the amount of salary of the latter. Being unable to come to an agreement with the plaintiff Dial, who refused to accept an annual salary of $1,200 proposed, a further meeting of the directors was held on the same day, at which a proposition on behalf of the plaintiff Dial to fix his salary at $2,500 was rejected by a vote of a majority of the directors, whereupon Mr. Dial tendered his resignation as president, which was accepted, and a new president was

elected by the directors in his stead, on the same day, to serve without salary.

The foregoing are conceded facts bearing upon the issues here presented, but there are certain allegations of fact by the plaintiffs which are controverted by the defendants and it is necessary to consider the testimony bearing upon these questions.

It is averred in the complaint, as a part of the contract by which the defendant Benjamin D. Riegal and his associates became the owners of the majority of the stock in the corporation, it was verbally agreed by defendant that the plaintiff N. B. Dial should be retained in the office of president of the corporation and be annually re-elected for that office, at a salary of $3,000 per annum, for a period of time "as long as he could and would give to the duties of the office proper attention;" and plaintiffs ask that specific performance of this contract shall be adjudged by the Court, it being alleged to be for the best interest of the plaintiffs and other stockholders that the same should be specifically enforced.

Without stopping to consider whether this alleged verbal contract comes within the provisions of the statute of frauds by which certain contracts are required to be in writing and signed by the party to be charged, and without passing upon the question so ably presented in argument as to whether, if such contract was originally within the terms of that statute, there has been such a part performance thereof as would suffice to render the statute inapplicable, it is only necessary to say that we have been unable to find any evidence in the record which would warrant this Court in overruling the concurrent findings of the referee and the Circuit Court that no such parol contract has been established by the testimony. Viewing the evidence in the light most favorable to plaintiffs and accepting as true all the statements under oath by the plaintiffs and their witnesses as to what was said by the defendants,

or any of them, at or about the time of the execution of the
written agreement already mentioned, with regard to the
retention of Mr. Dial as president of the corporation, we
are unable to discover anything said or done by any of the
defendants which could import into the contract in question
an agreement to retain Dial as president for any definite or
indefinite term of years.   It is not to be doubted that the
defendant Benjamin D. Riegal did, at the time of the nego-
tiations for the purchase of the stock, represent in general
terms that it was the then intention of himself and his asso-
ciates to keep Mr. Dial in the office of president, and it
might possibly be inferred from his words and conduct that
he then entertained the purpose of so retaining plaintiff for
some indeterminate period of years.   But there is absolutely
no proof, even by the testimony of the plaintiff N. B. Dial
himself, of any statement made or act done by any of the
defendants from which could reasonably be deduced an
agreement to continue Mr. Dial in the office of president of
this corporation during the remainder of his life or "so long
as he would and could give to the duties of said office proper
attention," for any other period capable of being definitely
determined.   It is true that the plaintiff N. B. Dial does say
that "they agreed to continue me as president, a lifetime
position, and pay me $3,000, which was to be increased as
the mill prospered;" but he does not undertake to say what
was the language used or otherwise to state the terms in
which such alleged agreement was phrased or to name the
person by whom it was so agreed.   It is evident from his
testimony as a whole that he does not mean to say that any
such agreement was in set terms so made, but that he merely
intends to convey his general understanding of what were
the intentions expressed by defendants with regard to the
matter of his retention as president.   The very action of
plaintiff Dial in resigning his office of president when his
salary was reduced by vote of the directors, is inconsistent
with his theory that he had a legal right to continue to hold

said office and to demand the compensation originally stipu-
lated; and this action on his part tends to show that, while
he may then have regarded the defendants as being morally
bound to retain him in the office of president at a salary of
$3,000 per annum, he could not at that time have considered
them as being bound by contract to this duty.

Upon the whole evidence we are staisfied that some one
or more of the defendants, in discussions had with some of
the plaintiffs, expressed a general purpose to retain the
plaintiff Dial in the presidency of this corporation for an
undetermined period at an unfixed salary; but we are unable
to discover any evidence in the record which would justify
the conclusion that any contract upon consideration was
made to keep him as such president for any period capable
of definite determination.

Aside, therefore, from any question as to the lack of
mutuality in any such contract as is claimed here to have
been made and apart from any considerations as to the
effect of the resignation by appellant Dial of his position as
president, we must conclude that no agreement upon con-
sideration has been established for the employment of said
appellant for any term which can be rendered certain nor
at any compensation definitely fixed. The exceptions,
therefore, which complain of error in the Circuit decree, in
any particulars based upon the failure or refusal of the
defendants to retain the plaintiff Dial in the office of presi-
dent of the defendant corporation, cannot be sustained and
the same must be overruled.

Appellants further urge that there was error by the Cir-
cuit Court in failing to find that the individual defendants
herein, as a part of the contract under which they
purchased the stock in the defendant corporation,
further contracted and agreed, verbally, to take the
entire output of the mill of the defendant company, forever
thereafter, at the prevailing market price; and that this con-
tract was subsequently broken by the defendants, whereby

the plaintiffs suffered damage by the impairment of the
value of their stock resulting from such breach of contract
on the part of the defendants.   As is substantially found by
the referee and confirmed by the Circuit Judge, the evi-
dence wholly fails to establish any legal enforceable con-
tract on the part of the individual defendants, or any of
them, to take any definite portion or the whole output of
the mill of the defendant company for any fixed or even
indefinite time.   The utmost that it can reasonably be con-
sidered that the evidence shows is that the defendant B. D.
Riegel, during the negotiations for the purchase by him of
the controlling interest in the stock of the defendant com-
pany, represented that he and others, individuals among
his codefendants, were in control of a corporation known
as the Riegel Sack Company, and that defendants would be
in a position to market the output of the Ware Shoals Manu-
facturing Co. by disposing of the same to the Riegel Sack
Co. at prevailing market prices and thus save the commis-
sions otherwise likely to be incurred in selling the products
of the defendant company through the agency of middle-
men.   It is manifest from the entire evidence that the state-
ments of the individual defendants as to this matter were
mere representations of the incidental benefits which were
likely to accrue from their contemplated connection with
the defendant company, and that such representations were
not intended and could not reasonably have been understood
as amounting to any contract, either by the individual
defendants or by the Riegel Sack Co., to take such output
of the defendant company at prevailing prices during all
future time.   It is evident that no such far reaching con-
tract could have been intended, as otherwise some action of
the defendant corporation would have been taken in pursu-
ance thereof, since it is hardly reasonable to suppose that a
contract so unlimited in extent of time should have been
left to the verbal understanding of one or two individuals
without any minute or memorandum made thereof and

without any action thereupon or reference thereto in any of the records of the proceedings of any meeting of stockholders or directors at the time when the written agreement already mentioned was adopted and confirmed. As the conclusion has been reached that there is an entire failure of evidence to show any such meeting of the minds of the parties or any such mutuality of agreement between them as to constitute a contract with reference to the taking by the individual defendants of the products of the defendant company at any stipulated price, there is no necessity for a consideration of the question as to the applicability of the provisions of the statute of frauds or as to the effect of any alleged part performance of such supposed contract.

The same finding of fact must be made with regard to the verbal contract charged to have been made by the defendants to furnish money from time to time for the use of defendant company at low rates of interest. Accepting all the testimony upon this point, even in the view most favorable to the plaintiffs, it merely shows that one or more of the individual defendants, at the time they were seeking to purchase a controlling interest in the stock of the defendant company, colloquially represented that they were in a position to procure loans of money for the uses of the defendant company, at low rates of interest, and that, in the event of their obtaining control of a majority of the stock in said company, they would procure and furnish such money "at lowest market rates of interest" from time to time as same might be needed; but there is no testimony as to any definite statement of the rate of interest at which such money could be furnished by them and no proof of any corporate action on the part of the defendant company in acceptance of any such proposition. It is true that it is testified by one of the plaintiffs that, at the time the matter was discussed and before the individual defendants became stockholders in defendant company, the statement was made by some unnamed one or more of the defendants

that they could then "furnish money at four per cent., but it would fluctuate." There is no testimony in the case as to what was the "lowest market rate" at which money could have been furnished for the use of the defendant company at any particular time at which it was needed by said company, nor was any proof adduced that said company was compelled at any time to borrow money at any rate higher than the "lowest market rate" then prevailing.

In brief, there is no evidence to establish the making of any definite contract with defendant company to furnish money for its use at any fixed rate, nor is there any proof of any loss or damage resulting to any of the plaintiffs by impairment of the value of their stock or otherwise, caused by any breach of the alleged verbal contract of the individual defendants to furnish money for the corporate purposes of the defendant company.

In so far as concerns the other specifications of error in the findings with reference to the matter of alleged extravagance on the part of the individual defendants in their action as stockholders or directors in the erection of residences upon the corporate property and in the issuance and sale of preferred stock, a careful examination of the record fails to show any error in the circuit judgment dismissing the complaint in these particulars.

The conclusions already announced as to the matters of fact render it unnecessary to consider certain exceptions, ably argued both on behalf of the appellants and of the respondents, charging error of law by the Circuit Judge in the holding that an agreement between stockholders to elect from year to year a certain person, for an indefinite period at a fixed annual salary would be void as contrary to public policy, and that such a contract must be held void in this case for the further reason that the same is in violation of the by-laws of the defendant company. Upon these exceptions as well as upon all others which raise questions of law based upon a view of the evidence at variance with the

facts as found by the Circuit judgment and concurred in by this Court, no opinion need now be expressed, since the questions thereby raised have become entirely speculative in consequence of the determinations reached as to the matters of fact.

The judgment of the Circuit Court is affirmed.